CATHARINA. The (THOMPSON v.). See Case No. 13.949.

CATHARINA MARIA The (JURGENSON v.). See Case No. 7,587.

CATHARINE. The (DICKINSON v.). See Case No. 3,897.

CATHARINE, The (UNITED STATES v.). See Case No. 14,755.

## Case No. 2,512.

### The CATHARINE AND MARTHA.

[11 N. Y. Leg. Obs. 225; 40 Hunt, Mer. Mag. 707.]

District Court, S. D. New York. June 4. 1853.

COLLISION BETWEEN SAILING VESSELS— RULES OF NAVIGATION—LOOKOUT — LESSENING EFFECT OF COLLISION.

1. A vessel sailing with a free wind is bound to get out of the way, or steer clear of one close-hauled.

2. The neglect to have a "lookout" stationed exclusively for the performance of that duty, and leaving the helm unattended, are reprehensible and serious faults.

3. The vessel having the privilege of keeping her course has the right to expect that the other will be steered clear of her.

4. When the vessel bound to give way does not to do so in time. the other may be so navigated as to avoid or lessen the effects of the apprehended collision.

In admiralty.

D. D. Field and J. S. Sluyter, for libellants. Cochrane & Donahue, for claimants.

INGERSOLL, District Judge. On the evening of the 21st day of April, in the year 1852, at a little after 8 o'clock the schooner San Louis, of Haddam, in the district of Connecticut, and owned by the libellants, loaded with a cargo of stone, and bound to Philadelphia, at a place about twenty-five miles south of Sandy Hook, on the high seas, was run into by the schooner Catharine and Martha, Collins, master, bound from a port in South America to New York, by which the vessel of the libellants and her cargo, were lost and destroyed. And the question is, which of these vessels, if either of them has been in fault? And that question depends upon the rules of navigation which should have been observed by them, respectively, at the time of the collision, and upon the evidence as given in the case.

The rules of navigation applicable to the case under consideration are well settled. They were considered by the supreme court of the United States in the case of St. John v. Paine, 10 How. [51 U. S.] 557, and were then established and settled, so as to be now free from doubt. Among these rules thus established are the following: 1. A vessel that has the wind free, or sailing before or with the wind, must get out of the way of the vessel that is close-hauled, and sailing by or against it. 2. The vessel on the starboard tack has a right to keep her course, and the one on the larboard tack must give way or be answerable for the consequences. 3. When two vessels are approaching each other, both having the wind free, and consequently the power of readily controlling their movements, the vessel on the larboard tack must give way, and each pass to the right. 4. The same rule governs vessels sailing on the wind, and approaching each other, when it is doubtful which is to the windward. And it was remarked by the court that no one can look through the reports in admiralty in England without being struck with the steadiness and rigor with which these general nautical rules have been enforced in cases of collision, under the advice of the Trinity masters of that court, or fail to be impressed with the justice and propriety of such application, and the salutary results flowing from it. These rules have been often sustained and established by various courts of high authority in different states in the United States. The court in the case in Howard also say, that a competent and vigilant lookout, stationed at the forward part of the vessel. and in a position best adapted to descry vessels approaching at the earliest moment, was indispensable to exempt the colliding vessel from blame, in case of accident in the night-time, while navigating waters on which it is accustomed to meet other water craft. Bearing these rules in mind. and applying them to the facts as found in the present case, there is no difficulty in determining what the decree should be.

The San Louis, as appears in evidence, was a schooner of about one hundred and eleven tons burthen, properly manned, and on her

voyage, bound to Philadelphia, started from Jersey City on the 21st day of April, in the year 1852. at about two or three o'clock in the afternoon. The collision took place at a little after eight o'clock in the evening, at about twenty or twenty-five miles south of Sandy Hook, where vessels are accustomed to meet. The wind at the time was about south-west by west. It was not blowing heavy, but there was a good sailing breeze. She was close-hauled to the wind, on her starboard tack, and was and had been steering between south and south by west, along the shore, and was at the time about four or five miles distant from the same. It had been raining, but at the time it was starlight, with some flying clouds, and vessels could be seen from three-quarters of a mile to a mile distant. She had a man on 'the look-out forward, but no light, and the mate was at the wheel. The Catharine was heading in an opposite direction to that of the San Louis, with a fair wind on her larboard tack, bound to the port of New York, with no one on her lookout forward, but with a light. No one on board the Catharine saw or noticed the San Louis until the San Louis was just under her bows, and a moment before the collision took place. A short time before the collision, and when the San Louis could have been seen if there had been a lookout forward, there was no one on the lookout forward, and no one at the wheel. When the Catharine was so without a lookout, and without any one at the wheel, the crew were reefing her mainsail. The captain, who left the wheel, was not so engaged. But before the collision he returned to the wheel. When the Catharine was first discovered by those on board the San Louis, she was about half a mile off, heading a little east of north, in an opposite direction of the San Louis, from one to two points to the leeward, on her lee bow. The San Louis kept her course, close-hauled to the wind, until just before the collision, when, discovering that the Catharine had luffed. and that a collision would take place, in order to avoid it if possible, or to lessen the effects of it, the San Louis luffed, and the Catharine struck her on the larboard side, head on, about opposite the hatch, abaft the fore rigging, by which the San Louis was cut down below the water line, in consequence of which it was not safe to remain on board of her, and she was abandoned by the crew and lost. The San Louis, if she had not luffed, would have been struck by the Catharine.

Applying the rules of navigation, as established by the supreme court, to the facts as above found, there is no difficulty in determining what decree should be passed. The San Louis was close-hauled to the wind, on her starboard tack, with a lookout forward, and, judging from the whole testimony, was a little to the windward of the Catharine. The Catharine had a free wind, she was on her larboard tack, with no lookout forward,

and was a little to the leeward of the San Louis. Both vessels were sailing in nearly opposite directions. Under these circumstances, according to the rules of navigation, as established by admiralty courts, it was the duty of the Catharine to have avoided the collision, and, as she did not, she must be answerable for the consequences. No fault is discovered on the part of those who were navigating the San Louis. The fault which occasioned the injury, is entirely attributable to the negligence of those who were navigating the Catharine. The nautical rules, as recognized by the supreme court, and applied by all admiralty courts, are salutary, and ought to be strictly observed. The injury complained of was occasioned by the Catharine's not regarding these rules. Several decisions in the district have also noticed and condemned emphatically the faults on board this delinquent vessel, and justified the navigation of the San Louis. Poole v. The Washington [Case No. 11.271]; The Emily [Id. 4,-452]; Morgan v. The De Peyster [Id. 9,805].

The decree therefore is, that the libellants recover their damages sustained by the collision, and that it be referred to a commissioner to ascertain and report the amount of damages sustained by the libellants.

---

CATHARINE WHITING, The. See Cases Nos. 9,068 and 9,069.

CATHCART (ROBINSON v.). See Cases Nos. 11,946 and 11,947.

CATHCART (UNITED STATES v.). See Case No. 14,756.

CATHERINA, The (NORDLINGER v.). See Case No. 10,295.

CATHERINA MARIA, The (WEEKS v.). See Case No. 17,351.

CATHERINE, The. See Case No. 692.

CATHERINE, The (UNITED STATES v.). See Cases Nos. 14,756a and 14,757.